UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHERI SWEET, | : | Case No. 1:08-cv-769 |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

### REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and, therefore, not entitled to disability income benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 17-26) (ALJ's decision)).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**I.**

On October 21, 2004, Plaintiff filed an application for DIB and SSI, alleging a disability onset date of October 1, 1995,[2] due to neck and back pain, asthma, diabetes, carpel tunnel syndrome, PTSD, and depression. (Tr. 56-50, 63, 406-09). The latter two disabilities apparently arise out of Plaintiff having been abused as a child by her father.[3] (*Id.*) Plaintiff's insured status expired on December 31, 2007.[4] (Tr. 61).

The Social Security Administration denied Plaintiff's claim initially and upon reconsideration. (Tr. 33-37, 40-41, 410-17). Plaintiff then timely requested a hearing before an ALJ. (Tr. 42-43). A hearing was held on May 24, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 423-50). A vocational expert, Ms. Chapman, was also present and testified. (Tr. 6, 20).

At the time of the hearing, Plaintiff was a 32-year-old female with a twelfth grade education.[5] (Tr. 68). She had limited past relevant work experience as a cashier, video

---

[2] The ALJ considered that Plaintiff worked until June 2003 as a home health aid at substantial gainful activity levels and, therefore, could not be found disabled before that date. (Tr. 19). Accordingly, the ALJ determined that June 2003 was the relevant onset date. (*Id.*) In her brief, Plaintiff concedes that the proper onset date is June 1, 2003. (Doc. 10 at 2).

[3] Plaintiff had one son after she was raped by her father, and this child eventually died at age 21 months. (Tr. 241). Plaintiff previously received SSI in 1995 after the death of her son. (Tr. 74).

[4] To be entitled to DIB, a claimant must show that she was disabled on or before the date her insured status expires. 20 C.F.R. § 404.131.

[5] Although Plaintiff completed 12th grade, her attendance had been only fair, as some days she had problems getting out of bed due to depression and she had no friends at school. (Tr. 242).

-2-

store clerk, and nurse's aid. (Tr. 64).

On June 19, 2007, the ALJ entered his decision finding that Plaintiff was not disabled because she retained the residual functional capacity to perform a significant number of jobs in the national economy. (Tr. 14-26). That decision became the final determination upon denial of review by the Appeals Council on September 11, 2008. (Tr. 5-8).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has engaged in substantial gainful activity since October 1, 1995, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe combination of impairments: asthma, history of carpal tunnel syndrome, depression/bipolar disorder, posttraumatic stress disorder, degenerative joint disease of the left knee, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She should work in a clean air atmosphere with no concentrated exposure to dust, fumes, gases, strong odors, or poor ventilation. She is limited to frequent bilateral handling and fingering. She can stand and/or walk 6 hour in an 8-hour workday and sit 6 hours. The claimant is limited to work involving only

  simple repetitive tasks. She should have no contact with the public and only superficial contact with coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 6, 1974 and was 21 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 1995 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-26).

  In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI benefits. (Tr. 26).

  On appeal, Plaintiff argues that: (1) the ALJ erred in determining her RFC; and (2) the ALJ erred by failing to include all of her impairments in his hypothetical to the

vocational expert. The undersigned agrees that the ALJ erred in determining Plaintiff's RFC.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that

left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

For her first assignment of error, Plaintiff maintains that the ALJ erred in determining her residual functional capacity ("RFC").[6]

**Medical Record**

The record reflects that:

Plaintiff lives with her mildly mentally retarded husband and their two young children who have multiple serious medical conditions. (Tr. 431). Specifically, Plaintiff has two young children with special needs: a six year old child with ADD, bipolar disorder, seizures, asthma, eczema, and possible autism; and a three year old child with ADD, bipolar disorder, seizures, asthma, eczema, and an undefined metabolic disorder. (*Id.*)

Plaintiff treated with Dr. Shubbs, a psychiatrist, between 1995 and 1999 but ended her treatment because she was not willing to discuss her child abuse issues (*i.e.*, abuse by her father).[7] (Tr. 242). Plaintiff resumed treatment with Dr. Shubbs on April 20, 2005

---

[6] "Residual functional capacity" denotes what an individual can still do despite his or her limitations. 200 C.F.R. §§ 404.1545(a), 416.945(a). According to SSR 96-8p, a RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. *See* SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; s*ee also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

[7] Plaintiff states that her mother and father divorced when she was 14 years old and she was forced to live with her father because he told her that if she did not live with him, he would kill her and her siblings. (Tr. 241).

through April 16, 2007. (Tr. 374-405). She resumed treatment for symptoms including fatigue, nightmares, ADHD-related symptoms (for which she was prescribed Strattera), racing thoughts, crying spells, suicidal ideation, irritability, problems being around people, and insomnia followed by hypersomnia. (Tr. 375, 376, 380, 384, 392, 393). During this two year period, Plaintiff saw Dr. Shubbs on 13 separate occasions. (Tr. 374-405). She also saw a therapist every two weeks. (*Id.*)

Dr. Shubbs completed a mental RFC dated May 15, 2007, which lists Plaintiff's diagnoses as follows: probable learning disability; PTSD, chronic bi-polar disorder, very rapid cycling; social anxiety disorder; ADHD, mixed type; and borderline personality disorder. (Tr. 400). Plaintiff's signs and symptoms included: appetite disturbance, decreased energy, feelings of guilt and worthlessness, generalized persistent anxiety, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic event, which are a source of marked distress, psychomotor agitation and retardation, persistent disturbance of mood or affect, paranoid thinking or inappropriate suspiciousness, emotional withdrawal and isolation, deeply ingrained, maladaptive patterns of behavior, easy distractibility, memory impairment, and sleep disturbance. (Tr. 401). Dr. Shubbs reported that Plaintiff had severe difficulties with performing even unskilled work, and he opined that Plaintiff would miss more than four days a month as a result of her impairments. (Tr. 402, 404).

**Hearing Testimony**

At the hearing, Plaintiff indicated that she left her job as a home health aid due to stress – having been told that she needed to get rid of her stress or she could lose the baby she was carrying. (Tr. 430).

When the ALJ asked about her activities of daily living, Plaintiff testified that she likes being alone in the dark and that she does not watch television or talk on the phone. (Tr. 437). She also testified that she does most of her grocery shopping using an electro-cart so that she does not have to stand or walk, and she also reported that her son helps her with the laundry. (Tr. 436-437). She further testified that after she puts her sons to bed, she sits in her little boy's closet and stays there until the next day. (Tr. 437-38). Plaintiff also testified that she has treated with Dr. Shubbs for her depression once a month (and, more recently, once every three months) since 2005, and that she sees a therapist once every two weeks. (Tr. 439).

**ALJ Decision**

In his decision, the ALJ found that Plaintiff has the following severe impairments: asthma, history of carpal tunnel syndrome, depression, bipolar disorder, PTSD, degenerative joint disease of the left knee, and obesity. (Tr. 19). He found that none of these impairments, individually or in combination, met or equaled a listing. (Tr. 20). The ALJ gave Plaintiff the residual functional capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. (*Id.*) He opined that she should work in a

clean air atmosphere with no concentrated exposure to dust, fumes, gases, strong odors, or poor ventilation. (*Id.*) He limited her to frequent bilateral handling and fingering and found her capable of standing and/or walking six hours total in an eight hour workday and sitting six hours total. (*Id.*) He further limited her to work involving only simple, repetitive tasks, no contact with the public, and only superficial contact with co-workers. (*Id.*)

In rejecting the opinion of the treating psychiatrist, the ALJ found that on several occasions Dr. Shubbs had indicated that Plaintiff was making some progress in her treatment and that these statements contradicted his findings of disability. (Tr. 237, 239, 379, 381, 387, 389, 394). However, the fact that a plaintiff may have had symptom-free periods of time does not prove her ability to work on a sustained basis. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (given the unpredictable course of mental illness, "symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse").

The ALJ also considered that the other record evidence was inconsistent with Dr. Shubbs' opinion. For example, the ALJ considered that Plaintiff was capable of maintaining a wide array of activities. (Tr. 23). For instance, she cared for her disabled husband and two children who had medical problems. (Tr. 228, 430-34). During the day, Plaintiff played with her children and diapered and fed them. (Tr. 242-43, 438). She ran errands two days per week, cooked, cleaned, and maintained her household. (*Id.*) However, a claimant's ability to perform limited and sporadic tasks does not mean that

she is capable of full-time employment. *Barker-Bair v. Comm'r of Soc. Sec.*, No. 1:06-cv-00696, 2008 U.S. Dist. LEXIS 27011, at *11 (S.D. Ohio Apr. 3, 2008) (*citing Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)). *See also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

Based on these facts, the ALJ found that Plaintiff is capable of making a successful adjustment to other work such as light stock clerk, quality control worker, and office helper and, therefore, denied the claim. (Tr. 25-26).

The ALJ gave Dr. Shubbs' RFC little weight even though he had been treating Plaintiff off and on since 1995, and regularly since April 2005. (Tr. 374-405). It is well established that the findings and opinions of treating physicians are entitled to substantial weight.[8] "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete

---

[8] The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983).

Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435 (if not contradicted by substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

Despite the social security regulations, the ALJ adopted the opinion of a non-examining psychologist who reviewed merely one consultative examination which occurred on December 22, 2004, before Plaintiff resumed her mental health treatment with Dr. Shubbs. The exam report was reviewed by two non-examining psychologists on January 20, 2005. Plaintiff resumed her treatment with Dr. Shubbs on April 20, 2005 through April 16, 2007 (13 times over two years). Therefore, none of the records of Dr. Shubbs, her treating psychiatrist, were ever reviewed by any of the reviewing psychologists. Accordingly, the statement that the opinions of the state agency psychologists who reviewed the overall record are reliable is error, and the statement that they reviewed the overall record is false.

Additionally, the ALJ failed to consider Plaintiff's inability to work an eight hour day on a regular and continuing basis. The record shows that Plaintiff would miss more than four days a month because of her impairments. (Tr. 402, 404). Accordingly, Plaintiff is precluded from performing work on a "regular and continuing" basis for a 40-hour work week as required by Social Security Ruling 96-8p, 1996 SSR LEXIS 5.[9] Plaintiff's inability to perform sustained work, even at the sedentary level, is not evident from the records, such that the ALJ's conclusion to the contrary is erroneous.

Accordingly, the undersigned finds that the ALJ improperly weighed the medical evidence by failing to give controlling weight to the treating physician. The non-examining psychologists' assessments, based in part on incomplete factual findings, does not constitute *substantial evidence* so as to overcome the findings of the treating physician.[10]

Therefore, the proof of disability is strong and opposing evidence is lacking in substance. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher,* 17 F.3d at 176. *See also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th

---

[9] "A claimant is disabled if he cannot perform full-time work. SSR 96-8p, 1996 SSR LEXIS 5." *Criner v. Barnhart,* 208 F. Supp.2d 937, 956 n.21 (N.D. Ill. 2002); *Gotz v. Barnhart,* 207 F. Supp.2d 886, 897 (E.D. Wis. 2002). "[P]art-time work does not constitute working on a 'regular and continuing' basis." *Carr v. Apfel,* No. 3:97cv7515, 1999 U.S. Dist. LEXIS 21202 at, *5 (N.D. Ohio 1999).

[10] Based on this finding, the Court need not address Plaintiff's second assignment of error.

Cir. 1985). Accordingly, this matter should be remanded for an award of benefits.

**III.**

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's treating psychiatrist, proof of disability is overwhelming.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits and supplemental security income beginning on June 1, 2003, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:  November 27, 2009            s/ Timothy S. Black
                                    Timothy S. Black
                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHERI SWEET, | : | Case No. 1:08-cv-769 |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).